SMITH, SURVIVING PARTNER OF SMITH AND LANE, *vs.* STONE AND MULLIKIN, *June,* 1832.

One partner cannot bind another by deed, yet he may execute a release under seal in the partnership name, which will discharge a debtor to the partnership.

Where debtors transferred property in trust for the benefit of creditors, who agreed to accept their respective proportions of the estate conveyed, and in consideration thereof, released the debtors from all liability, in an action by one of the creditors against the debtors, it is not competent for the

plaintiff to show, in order to avoid the release, either, that one of the defendants had represented to the witness, (who was a creditor,) that the creditors generally, had consented to sign the release, and that he (the witness,) had executed it under that impression, or, that one of the creditors had refused to execute the release, and the defendants in order to induce him to sign it, had secretly agreed to pay him, and did pay him, without the knowledge of the other creditors, an additional consideration. Such evidence does not establish any fraud.

When there is an understanding, that all the creditors of a particular debtor are to sign a deed of release, upon certain conditions, and to receive nothing beyond their proportions of the trust fund, or that the deed should be void, any underhand agreement to pay more, would have been a breach of faith, and a violation of the principles of morality and fair dealing.

APPEAL from *Baltimore* County Court.

*Assumpsit* by the appellant *William Smith*, as surviving partner of *James S. Lane*, and *John Smith*, trading under the firm of *James S. Lane* and *Smiths*, against the appellees, trading under the firm of *James Stone, Jr. & Co.*, on a promissory note, the execution of which, by the defendants was admitted, dated 20th December, 1821, at six months, for $193 75. Issue was joined upon the plea of *non assumpsit*.

1. At the trial, the defendants having read to the jury a deed, dated 27th July, 1822, executed by them, to trustees, of all their partnership property, and effects, for the purpose of applying the proceeds of the same, among those of their creditors, who should within three months from the date thereof, execute to them a full and final release and discharge from any claim and demand, they might respectively have upon them;" offered to read to the jury the following paper. " We, the several persons who have hereunto subscribed our names, creditors of *Benjamin H. Mullikin*, and *James Stone, Junior*, lately trading under the firm of *J. S. Jr. & Co.*, send greeting: Whereas the said *B. H. M.* and *J. S. Jr.*, by deed bearing date the 27th day of July, instant, and intended to be recorded, have conveyed unto *Alexander Fridge, John Gibson* and *Thomas W. Hall*, their heirs, &c. all and singular the joint estates, effects and property, real and personal, of them the said *B.*

*H. M.* and *J. S. Jr.*, and also all debts and sums of money due or owing to them in their joint or co-partnership capacity aforesaid, to hold, receive, and take the same, and to dispose thereof for the benefit of the creditors of the said firm of *J. S. Jr. & Co.*, in the manner and upon the terms and conditions in the same deed expressed and set forth. And whereas the said *J. S. Jr.*, individually, by deed of even date with the one above referred to, and intended to be recorded, hath conveyed, assigned and transferred, to the same trustees, certain real and personal estate, specified in a schedule annexed to said last mentioned deed, and subscribed by the said *J. S. Jr.*, to hold to the said trustees, for the like purposes with those expressed in the aforesaid deed first mentioned, as by reference to said deeds may more fully and at large appear. We have therefore agreed, and do hereby agree to accept of our respective shares and proportions of the property, estate, effects, and debts, so as aforesaid conveyed and transferred by the said *B. H. M.* and *J. S. Jr.*, jointly, and the said *J. S. Jr.*, individually, to the said *A. F.*, *J. G.* and *T. W. H.*, in full satisfaction of the debts and sums of money owing to us respectively, at the time of the signing and sealing hereof, by or from the said *B. H. M.* and *J. S. Jr.*, in their co-partnership capacity aforesaid; hereby declaring our assent to and approbation of, as well the aforesaid deeds of trust, as the provision by them made for the discharge of our respective claims. Now therefore, know ye, that for the consideration aforesaid, each of us the said creditors, who have hereunto set our hands and seals, for himself, his heirs, executors and co-partners, doth by these presents remise, release, and forever discharge the said *B. H. M.* and *J. S. Jr.*, their heirs, &c. of and from, all and all manner of action and actions, suit or suits, claims and demands whatsoever, which against the said *B. H. M.* and *J. S. Jr.*, or either of them, each and every one of us, their said creditors, now have, or which each and every of our heirs, executors or administrators respectively, hereafter may, can or ought to have, for

or by reason of our respective debts, to us severally due or owing from the said firm of *J. S. Jr. & Co.*, in anywise howsoever. In testimony whereof, we have severally subscribed our names, and affixed our seals, this 29th day of July, 1822."

And offered evidence to the jury, that the said instrument of writing was signed "*Lane and Smiths*," sealed and delivered by *John Smith*, one of the partners of the firm of *Lane and Smiths*, in the name of the said firm of *Lane and Smiths*, but without any authority for that purpose from either of the other partners, except so far as the said authority was incident to the character and power of a partner. The plaintiff objected to the admissibility of the said instrument of writing or release, on the ground that it was not the deed of the plaintiff, or of the firm of *James S. Lane and Smiths*, or of any person constituting one of that firm; but the court *(Hanson and Kell, A. J.)* overruled the said objection, and allowed the said instrument of writing to be given in evidence to the jury. The plaintiff excepted.

2. The plaintiff, after the evidence stated in the first bill of exceptions, (which is to be taken as a part of this exception,) had been given to the jury, offered to prove by *Thomas W. Hall*, that he, as one of the firm of *T. W. and C. A. Hall*, creditors of the defendants, had executed the release mentioned in the first bill of exceptions, before the said release was signed by *John Smith*, the deceased partner of the plaintiff, as stated in the said first exceptions; that *James Stone, Jr.* one of the defendants, had represented to him that the creditors generally had consented to sign the said release, and that the witness had executed it under that impression. "And the plaintiff further offered to prove by the said *Hall*, and by *Henry Beadell*, a competent witnesss, that one of the said creditors had refused to execute the said release, and the defendants, in order to induce him to sign it, had secretly agreed to pay him, and actually did pay the said creditor, without the knowledge of the other creditors, an additional consideration, to wit, *seventy-five per*

*centum* of his whole claim, which the plaintiff contended was a misrepresentation, and in law a fraud by defendants practised on the rest of the creditors, and renders the said release void and inoperative as to the plaintiff; but the court refused to permit the said testimony to be given to the jury. The plaintiff excepted, and verdict and judgment being against him, he prosecuted the present appeal.*

The cause was argued before EARLE, MARTIN, STEPHEN, and DORSEY, J.

*Lloyd*, for the appellant.

1. It is a settled principle of law, that *one partner* cannot bind the *firm* by *deed*, no matter what consideration passes, *unless a special authority under seal be given him for that purpose;* or unless the other partners be present at the execution and assent thereto. *Harrison vs. Jackson et al.* 7 *Term. Rep.* 207. *Ball. vs. Dunsterville, et al.* 4 *T. R.* 313. The deed in question, not being stated to have been executed in the presence, or with the knowledge of the other members of the firm, and there being no special authority, is clearly therefore *not the deed of the firm.* But it is said, that the case of a *release* is an exception to the rule : that though such release is *not* the *deed of the firm,* yet it is the deed of the individual member who executes it, and is obligatory on the firm. It is true, that the books make this distinction, and it is on the principle, that a release by one joint obligee, is an extinguishment of the debt. *Gow. on Partnership* 83, 84–5–6–7. *Mont. on Composition,* 15. This exception as before stated, is made on the ground, that the instrument of release, though not the deed of all the partners, *is the deed of the particular individual of the firm, who executed it.* Therefore, I apprehend, that unless it can be shown, that the instrument in question, *can operate as the deed, and is the deed of John Smith,* it is no bar to the plaintiff's suit. Is it then the deed of *John Smith?* It will be observed, that the instrument purports

on its face to be the deed of those "*who have thereunto severally subscribed their names, and affixed their seals,*" and that the name of *John Smith,* does not appear in *any part* of it. The only name, or names, subscribed by *John Smith,* according to the proof, are the names "*Lane* and *Smiths.*" Is this then the name of *John Smith?* Can *parol* evidence be admitted to show, that a certain person by name, *John Smith,* subscribed the names "*Lane and Smiths,*" and affixed a seal thereto, when the deed on its face purports to contain the names of the several persons who executed it? By the admission of such evidence will the court say, that although the deed on its face shows the *surnames* of two or three persons, with one seal affixed, and although such surnames do not identify any individual yet that in fact it is the deed of a particular person? And will the court do this, when the surname subscribed to the instrument does not even correspond with the surname of the person who is said by the parol evidence to have executed it? The names subscribed are "*Lane* and *Smiths,*" the person, who is proved to have subscribed them, is named *John Smith.* It is a principle of law, that a deed must on its face distinguish with reasonable certainty the person who is the grantor, and the person who is the grantee : and if the deed does not so distinguish, it is void for uncertainty, as it would be for uncertainty in the description of the thing granted. *Shep. Touch.* 233–4. 10, *Co. Rep.* 123–4, and the cases there cited. Can any one from an inspection of this instrument say, that there is any certainty as to the grantor? And if parol evidence may be adduced to show, that *John Smith* subscribed the names "*Lane and Smiths,* and it may thence be inferred, that the instrument is the *deed* of *John Smith,* might it not with equal reason, and on the same principle, be allowed, that parol evidence shall be introduced to show, that a deed purporting on its face to be the deed of *Robert Rogers* is in fact the deed of *Thomas Rogers?* Yet the books all say, that a *mistake* in the *Christian* name of the grantor, or

grantee *avoids* the deed. And the same books say that the *omission* of the *Christian* name avoids the deed, which is the fact in the present instance. *Comyn. Dig. Tit.* " *Grant.* "(A. 2.) lays it down expressly, that " a *mistake* of the *Christian* name of a grantor or grantee *shall not be supplied.*" Again—*Bac. Abrid.* "*Grant*" (C.) "It seems by the better opinion of the books, that a *mistake* of the *Christian* name will *vitiate* the grant: as when the grant is *without any Christian name at all*, or where a *wrong name* is made use of, as *Edmund* for *Edward.*" Also, in *Sheppard's Touchstone*, 233–4, after stating that the names of the persons in grants are set down to distinguish them, and to make the person intended *certain;* that it is best to describe the person by his true and proper name of baptism, and also by his surname; and if it be a corporation, by the true name whereby the corporation is made, "yet (it is added,) mistakes in this case, unless they be very gross, will not make void the grant. "*Nihil facit error nominis cum de corpore constat.*" But the author shows afterwards by the cases which he states, what he means here by a *very gross mistake:* for, in the same paragraph he says, "But if an *ordinary man* grant by his surname only, without any name of baptism, or by his name of baptism, without any surname at all; *in these, and such like* cases, for the most part, *the grant will be void for uncertainty:* unless there be *some other matter in the deed to help it,* or some matter done *ex post facto* to supply it: for in some cases, where the thing granted doth lie in livery, such a mistake or uncertainty in the grant may be holpen by the livery of seisin upon the deed afterwards." *Shep. Touchs.* 233–4 " *Grant.*" *ad id.* 4 *Cru. Dig.* 35. " *Deed.*" Now, in the case before the court, there is no *Christian* name, neither does the surname subscribed to the instrument correspond with the surname in the parol evidence—and there is *no other matter in the deed* to help it, neither is there any matter done " *ex post facto,*" to supply the uncertainty. So also in the case of the *Mayor and*

*Burgesses of Linne,* 10 *Co. Rep.* 123, *a.* which was an action on a bond given by *John Pain* to the *Mayor, &c. of Linne,* by the name of " *Majoris et Burgensium de Linne Regis,*" it was in proof that the grantees were incorporated by the name " *Majoris et Burgensium burgi domini regis de Linne regis,*" and an objection was made by defendant's counsel, that the bond was void on account of the misnomer of the grantee. The court held in that case, (after it had been oftentimes argued at the Bar (p. 123 a.) that the variance was only "in *syllabis et verbis,*" and not "in *sensu et re ipsa,*" and *therefore,* not material. (p. 125 a.) *Coke adds,* (p. 125–6) "so that the name in the bond *by matter apparent therein* imports a *sufficient certain* demonstration of the true name of the incorporation." And it will be found, as well by the principles applied by the court to that case, as by the cases therein cited and approved, that the decided cases go at least as far as the positions above laid down by *Comyn and Sheppard,* and followed by *Bacon* and *Cruise.* The case of 10 *Co. R.* 123, is a case of uncertainty in the name of the grantee, but the principles equally apply to the case of the grantor, as may be seen from the case of the *"Eaton College"* therein cited (p. 124 a) and admitted to be of authority. *Vid. et Moor.* 13, 1 *Anders.* 23, *Dyer* 150, pl 84, 1 *Leon* 159. From all these authorities, I think it clear, that it is material in law, that the grantor should be named. Is there any grantor named here? From the same authorities, (particularly *Shep. Touchs.* 234, and 10 *Co. R.* 125 *a. b.*) it seems equally clear, that the name must be certain *from matter apparent in the deed itself;* and that parol evidence cannot be introduced to supply the defect in this respect. *Comyn Dig.* " *Grant*" (A 2) says expressly "a mistake in the *Christian* name of the grantor, or grantee *shall not be supplied.*" Is there any matter apparent in the deed itself here, which (to use the words of 10 *Co. R.* 125 a. b.) "imports a sufficient certain demonstration of the true name of the grantor ?" It certainly cannot be pretended that there

is *any Christian* name here—and an *omission*, according to the same books, is *equally fatal* with a *mistake:* and moreover as I have before stated, the surname proved by the parol evidence, even if such evidence was admissible, does not correspond with the name subscribed to the instrument before the court.

If then these authorities are to be relied on, the instrument in question is not the *deed* of the firm, neither is it the deed of *John Smith.* If it cannot operate as a deed, it cannot operate at all against the plaintiff in this case. For it is clearly the *deed* of *John Gibson* and of several others, who it appears have duly executed it. The same instrument cannot operate as the *deed* of *one* person, and the parol agreement of *another*, as a deed for one purpose, and not a deed for another, and that too, when it purports on its face to be a deed. But if it were held to be a *discharge not under seal*, yet it would not be a bar to the plaintiff's suit in this case. It will be observed, that the debt, for which this suit is instituted, *was due* at the time of the signing of the instrument of writing in question. *Watson on Part.* 234. "A promise, *before* it is broken, may be discharged by a *parol* agreement: but *after* it is broken, it *cannot be discharged without deed*, by any new agreement without satisfaction." Again—this instrument does not purport to be in consideration of full satisfaction, but of the shares, which may come to each creditor. In *Fitch vs. Sutton*, 5 *East.* 230, it was expressly decided, "that where a less sum than the whole demand was paid, and agreed to be received, in satisfaction of the claim, the acceptance of the less sum is no discharge of the debt, *unless it is done by deed;* and in that case, the plaintiff recovered the balance, *the discharge not being under seal. Ad id. Cumber vs. Wane*, 1 *Stra. R.* 426, *vid. et Pinnel's* case, 3 *Co. R.* 118. For these reasons we think the court below erred in the decision in the first bill of exceptions.

2. On the 2d bill of exceptions. In *Cooling vs. Noyes*, 6 *Term. Rep.* 263, it was decided, that if a

debtor represents to one of his creditors, that if he will agree to accept a composition for his debt, all the other creditors will do the same, and such creditor do agree to accept it in consequence of such representation, the agreement is not binding on the said creditor, if the representation be untrue. Again—In *Child vs. Danbridge*, 2 *Vern.* 71, it was held, that a *secret agreement*, to pay some of the creditors in full, *was a fraud on the rest;* and the court on that ground, refused the *debtor* the relief prayed. And *Small vs. Brackley*, 2 *Vern.* 602, is to the same effect. *Doe. vs. Anderson*, 5 *M. and Selw.* 161, decides, that where a party executes a *release under seal*, with an ignorance and concealment of important facts, *he is not bound by it.* Bayley, J., says "I do not see any reason why the plaintiff should have gone on under a deed, executed in ignorance, and under concealment. The bankrupt was *guilty of a fraud*, by concealing, instead of disclosing an act of bankruptcy, which distinguishes the case from *Bamford vs. Baron.*" See also *Montague ou Composition*, 32. And how, I would ask, do the courts in these cases ascertain that there has been a fraudulent representation, if the party against whom the agreement or release is produced, may not be permitted to offer parol proof of such fraud? Yet here such proof was rejected.

In conclusion I will add, that the present case does not come within the principle of that class of cases, in which it has been held, "that if the plaintiff by signing a composition induced others to sign, he cannot afterwards sue for his whole debt, because it would be a *fraud* on those *who signed after him.*" Because in the present case, there was a *fraud* practised on *all the parties signing*, the plaintiff, as well as those who signed after him. The *latter* therefore, are *not bound* by the release, any more than the *former*, and any of them may sue. Whereas in the cases in which the above principle was applied, it will be found, that there was *no fraud on the part of the debtor*, and consequently, *the other creditors were bound by the composi-*

*tion,* and the plaintiff in those cases, wished to take advantage of certain circumstances *peculiar to his own case,* which avoided his release to the defendant, while he left the other creditors *(whom he had induced to sign)* without the benefit of the consideration they had contemplated, to wit, the discharge of the defendant, or a certain amount of composition money.

No counsel argued for the appellees.

STEPHEN, J., delivered the opinion of the court.

This action of *assumpsit* was brought upon a promissory note, executed by *Stone* and *Mullikin,* to *Lane and Smith,* in the course of the trial of which, two bills of exception were taken to the opinions of the court below. The defendants to support the issue of *non assumpsit* by them pleaded, gave in evidence to the jury, a deed of trust executed by them, by which they conveyed certain real estate and all their partnership property of every description, to certain trustees for the benefit of such of their creditors, as should within a limited time, give them a final discharge from the payment of their respective claims. In conformity with the provisions of this deed of trust, several of the creditors of *Stone* and *Mullikin* executed a deed of release, and among the number it was executed by *John Smith,* one of the partners of *Lane and Smith,* by the name of the firm of " *Lane* and *Smith.*" To the admissibility of this release as evidence in the cause, the plaintiff by his counsel objected, upon the ground, " that it was not the deed of the plaintiff, or of the firm of *James S. Lane* and *Smith,* or of any person, constituting one of that firm." Which objection was overruled by the court, and the deed of release held sufficient to be given in evidence to the jury.

As a general position it is incontrovertibly true, that one partner cannot bind another by deed ; but this well settled principle of law, was not applicable to the case then before the court. It was not the effect, or operation of the instrument of writing, to charge the partnership with a debt ; but

it was nothing more than a release, or discharge of a debtor to the partnership. See 3 *Johns. Rep.* 70, where chief justice *Kent*, in delivering the opinion of the court, holds the following language; " it is a general principle of law, that where two have a joint personal interest, the release of one bars the other, and I cannot perceive that the case of co-partners in trade forms an exception to the general rule. Each partner is competent to sell the effects, or to compound, or discharge the partnership demands. He is to be considered as an authorised agent of the firm, for all such purposes. Each has an entire control over the personal estate." See also 2d *Wheat. Selw.* 311, where it is said, " there is an exception to the general rule, that a partner cannot bind his co-partners by deed. A release under seal by one partner in the name of the firm, of a debt due the partnership, is binding on all the partners." The court below were therefore unquestionably correct in the opinion given by them, to which the first exception was taken. Nor do we think, that they erred in the opinion delivered by them, which is contained in the second exception. The plaintiff offered to prove by one of the creditors of the defendants, that he had executed the release before it was signed by *John Smith*, and that *Stone*, one of the defendants, had represented to him, that the creditors generally, had consented to sign the said release, and that the witness had executed it under that impression; and further offered to prove by said witness and another witness, that one of the creditors had refused to execute the release, and the defendants, in order to induce him to sign it, had secretly agreed to pay him, and actually did pay the said creditor, without the knowledge of the other creditors, seventy-five *per centum* of his whole claim, which the plaintiff contended was a fraud upon the other creditors, and rendered the release void, and inoperative as to him. Which testimony the court refused to be given to the jury.

It is presumed that the ground upon which the counsel supposed the release to be invalidated, was, that a deceit had been practised upon the other creditors, by the payment of this extra sum to the refusing creditor. But we do not think such a position tenable under the circumstances of this particular case. There was no understanding that all the creditors were to sign the deed of release upon certain conditions, and to receive nothing beyond their proportions of the trust fund, or that the deed should be void. If such had been the stipulation of the contracting parties, any underhand agreement to pay more, would have been a breach of faith, and a palpable violation of the principles of morality, and fair dealing. *Small vs. Brashley,* 2 *Vern.* 602. In such a case, a creditor would have a right to say, that he had been imposed upon; that the release had been obtained *per fraudem,* and was therefore void. But in the case now before this court, there is no one feature of fraud, or deception. There was no understanding between the parties, that all the creditors were to receive only a certain sum, by way of composition, for their respective demands; or that their respective releases should be void. On the contrary, the agreement was absolute and unconditional, that the defendants should be discharged, upon the creditors, who should sign the deed of release, receiving their respective proportions of the trust fund; indeed, the evidence offered only tended to prove, that the defendants had represented to the witness, that the creditors *generally* had consented to sign the release, and that he had executed it under that impression. We therefore think, that no deception was practised upon the plaintiff in this case, and that the judgment of the court below ought to be affirmed.

JUDGMENT AFFIRMED.